UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. |
| | : | 3:20-CR-00168 (JCH) |
| v. | : | |
| | : | |
| MIGUEL RIVERA, | : | OCTOBER 2, 2023 |
| Defendant. | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT (DOC. NO. 139)**

**I.   INTRODUCTION**

Defendant Miguel Rivera ("Rivera") has been charged with unlawful possession of a firearm and ammunition by a felon, in violation of sections 922(g)(1) and 924(a)(2) of title 18 of the United States Code.  See Superseding Indictment (Doc. No. 116). Rivera has moved to dismiss the Superseding Indictment on the grounds that it is impermissibly duplicitous.  See Motion to Dismiss the Superseding Indictment ("Def.'s Mot.") (Doc. No. 139).  The government opposes the Motion.  See Government's Opposition to Motion to Dismiss the Superseding Indictment ("Gov.'s Opp.") (Doc. No. 147).  On October 2, 2023, the court issued an Order denying the Motion (Doc. No. 154).  The court now issues this formal Ruling to articulate the bases for its denial.

**II.   DUPLICITY**

In his Motion, the defendant argues that the Superseding Indictment is duplicitous because it charges him with possession of a firearm and ammunition under a single count, even though (1) the firearm and ammunition were found under different

circumstances,[1] and (2) the "evidence for each charge is different".[2]  See Def.'s Mot. at 2.  The government contends that the Superseding Indictment "properly charges the defendant as the alleged unlawful possession occurred at the same time—his arrest on July 5, 2020".  See Gov.'s Opp. at 1, 2-6.

    The court agrees with the government.  The Second Circuit has held that, "a convicted felon who simultaneously possesses various firearms and rounds of ammunition can generally only be charged with a single violation of [section] 922(g)." United States v. Olmeda, 461 F.3d 271, 279-80 (2d Cir. 2006); see also United States v. Pelusio, 725 F.2d 161, 168 (2d Cir. 1983) ("[A]bsent any evidence that the defendants received the [firearm] and the . . . ammunition on separate occasions, they could not lawfully be found guilty of receipt of the gun and the ammunition as separate crimes forming the subject of multiplicitous counts.").  Multiple charges for different firearms and ammunition are, generally, only warranted "if the evidence shows that the felon acquired possession of the firearms or ammunition on different occasions, or that he stored them at different sites."  Olmeda, 461 F.3d at 280.  Here, the government alleges that Rivera possessed one firearm, a "Romarm/Cugir WASR 10, AK Type Model, 7.62x39mm caliber, semi-automatic rifle", as well as "approximately 30 rounds of Tula

---

[1] As the defendant states in his Motion, the government alleges that, when the defendant was arrested on July 5, 2020, a single round of "Prvi Patiizan (PPU) 5.56x45mm ammunition" was recovered from his pocket; the government further alleges that a "Romarm/Cugir WASR 10, AK Type Model, 7.62x39mm caliber, semi-automatic rifle" and "approximately 30 rounds of Tula 7.62x39mm ammunition" were recovered from the ground in the vicinity of where Rivera was arrested.  See Def.'s Mot.; accord Gov.'s Opp. at 5; Superseding Indictment.

[2] The defendant contends that the government relies on a different evidentiary basis for his alleged possession of the round of PPU ammunition than it does for the alleged possession of the rifle and the Tula ammunition.  See Def.'s Mot.  Specifically, the defendant argues that "the only actual evidence [Rivera] possessed the [rifle] (and the loaded magazine [containing Tula ammunition]) was a statement law enforcement attributes to Mr. Rivera", whereas the "basis for the ammunition charge is the police report (and, presumably, the testimony) of the arresting officer".  See id.

7.62x39mm ammunition" and "one round of Prvi Patiizan (PPU) 5.56x45mm ammunition", simultaneously and over the course of a single night.  See Superseding Indictment.  The government is not alleging that Rivera acquired the firearm and ammunition on different occasions or stored them at separate sites.  Given the government's allegations, the court finds that charging Rivera under a single count, rather than under multiple counts, is appropriate.

### III.   JURY UNANIMITY

Although the defendant does not address the issue of jury unanimity in his Motion, the government's Opposition addresses the issue, and the issue was also discussed by the court and counsel for both sides at the pretrial conference on September 27, 2023.  As such, the court will address unanimity in its Ruling.

The government contends that the jury need not be unanimous as to the specific firearm and ammunition the defendant possessed because the type of firearm or ammunition possessed is a means, rather than an element, of section 922(g).  The Second Circuit has yet to address the specific question of whether a jury must be unanimous as to the specific type of weapon to convict a defendant under section 922(g).  However, other circuits have found that unanimity as to the specific firearm or ammunition is unnecessary.  The First Circuit first addressed the issue in United States v. Verrecchia.  There, the court applied the Supreme Court's reasoning in Richardson v. United States, which held that a federal criminal jury need only unanimously agree on each "element" of the crime to convict but may nonetheless disagree on the "underlying brute facts [that] make up a particular element."  United States v. Verrecchia, 196 F.3d 294, 298-99 (1999) (citing Richardson v. United States, 526 U.S. 813, 817 (1999)).  The

First Circuit analyzed section 922(g) and concluded that the "plain language of the statute suggests that the element of the crime is simply the possession of 'any firearm'"—a conclusion that was bolstered by the statute's "punishment provisions", which, the appeals court found, did not "indicate[ ] an intent on the part of Congress to link culpability to the nature and quantity of the weapons possessed . . . ." Id. at 299-300.

Since then, multiple other circuit courts—the Fifth, Sixth, and Seventh Circuits—have adopted Verrecchia's holding, and it does not appear that any circuit courts have reached contrary holdings. See, e.g., United States v. DeJohn, 368 F.3d 533, 542 (6th Cir. 2006) ("We are convinced by Verrecchia's careful analysis of the statute, and we hold accordingly that the particular firearm possessed is not an element of the crime under § 922(g) . . . ."); United States v. Talbert, 501 F.3d 449, 451-52 (5th Cir. 2007) (adopting the "careful analysis" of Verrecchia); United States v. Pollock, 757 F.3d 582, 587-88 (7th Cir. 2014) (applying Verrecchia and holding that "possession of a specific firearm [i]s not an element of the offense"); see also United States v. Workman, 755 Fed. App'x 533, 538-39 (6th Cir. 2018) (finding that jury unanimity was not required where the evidence at trial was such that a juror could find that the defendant's "constructive possession—the act—extended to any firearm or ammunition listed in the indictment").

In addition, as the government noted in the pretrial conference, the Second Circuit has addressed jury unanimity in other contexts. For example, the Second Circuit has held that, in the context of drug distribution and possession under sections 841(a)(1) and 841(b)(1)(C) in title 21 of the United States Code, a jury need not agree

4

on the specific controlled substances involved in a violation, "as long as the jury unanimously agrees that the offense involved some schedule I or II controlled substance". See United States v. Requena, 980 F.3d 30, 48-51 (2d Cir. 2020); accord United States v. Thomas, 274 F.3d 655, 660 n.3 (2d Cir. 2001) (holding that the type and quantity of a drug need only be submitted to the jury "as an element . . . in cases where the Government will seek a sentence above a statutory maximum in the event of a conviction"). Indeed, in reaching these holdings, the Second Circuit has relied on the same reasoning as the Verrecchia court and its progeny, citing Richardson's language that a jury need only agree on the elements of a statute—rather than the underlying means or "brute facts"—and emphasizing that unanimity is unnecessary where the "specific nature of th[e] substance has no bearing on the statutory penalty range." Requena, 980 F.3d at 48-50; see also Verrecchia, 196 F.3d at 300 ("Nothing in [section 922(g)'s] statutory provisions indicates an intent on the part of Congress to link culpability to the nature or quantity of the weapons possessed . . . ."). The Second Circuit has also relied on a more recent Supreme Court case, Mathis v. United States, where the Court further delineated the difference between "elements" and "means" or "brute facts":

> [I]n [Mathis] the Supreme Court discussed a hypothetical statute that requires use of a "deadly weapon" as an element of a crime and further provides that the use of a "knife, gun, bat, or similar weapon" would all qualify. The Court explained that because only the use of a deadly weapon is an element—and the illustrative list "merely specifies diverse means of satisfying [that] element—a jury could convict even if some jurors concluded that the defendant used a knife while others concluded he used a gun, so long as all agreed that the defendant used a "deadly weapon." That said, if statutory alternatives carry different [maximum or minimum] punishments, then . . . they must be elements.

5

See Requena, 980 F.3d at 49 (citing Mathis v. United States, 579 U.S. 500, 505 (2016)).

The court finds that these legal principles, as established by the Supreme Court and the Second Circuit, are applicable to section 922(g).  Section 922(g) prohibits a felon's possession of "any firearm or ammunition".  See 21 U.S.C. § 922(g) (emphasis added).  It is also a simple statute that does not "carry different punishments" depending on the firearm or ammunition possessed.  See Mathis, 579 U.S. at 505.  Given the controlling case law, the court concludes that, in rendering a verdict on a single "felon in possession" count, a jury need not be unanimous as to the precise firearm or ammunition that the defendant possessed.

As the court stated on the record during the September 27, 2023, pretrial conference, the court is considering the use of an interrogatory as a potential means of addressing the defendant's concerns.  The Second Circuit has held that interrogatories are generally disfavored in criminal cases, though they are occasionally permitted—and even recommended—in certain contexts.  See United States v. Pierce, 940 F.3d 817, 821 (2d Cir. 2019) (noting that interrogatories, while generally discouraged, are recommended for determining whether a jury has found "continuing series of violations" for purposes of establishing a continuing criminal enterprise conviction under 21 U.S.C. § 848(c)).

The court has yet to decide whether it will use an interrogatory in the case at bar, and it intends to make a final decision by October 11, 2023.

## IV.     CONCLUSION

For the reasons discussed above, the Motion to Dismiss the Superseding Indictment (Doc. No. 139) is denied.  The court will decide whether it will use an interrogatory by October 11, 2023.

**SO ORDERED.**

Dated at New Haven, Connecticut this 2nd day of October 2023.


    /s/ Janet C. Hall         
Janet C. Hall
United States District Judge